**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
FLAGSTAR BANK, FSB,

       Plaintiff,        **MEMORANDUM**
                  **AND ORDER**

   - against -
                  CV 05-2364 (JG) (JO)

CARIBBEAN MORTGAGE CORP., et al.,
        Defendants.
--------------------------------------------------------X

**JAMES ORENSTEIN, Magistrate Judge:**

   On May 30, 2006, the parties to this case entered into a settlement agreement and judgment was entered accordingly. *See* Docket Entry ("DE") 16. Several months later, defendants Caribbean Mortgage Corporation and Udit Meetoo asked for a conference at which they intended to seek leave to file a motion "to reform or vacate the Stipulation of Settlement and/or vacating [sic] the said Judgment under F.R.C.P. 60(b)." DE 20 at 3. There followed a series of letters from the parties, a conference before me at which I asked about the merits of the contemplated motion, and then a decision by the defendants – undoubtedly a wise one – to abandon their efforts to upset the settlement and judgment.

   The matter did not end there: before me now, upon a referral from the Honorable John Gleeson, United States District Judge, is a motion by plaintiff Flagstar Bank, FSB ("Flagstar"), for an award of its litigation costs, including reasonable attorney's fees, in responding to the defendants' wholly frivolous application. DE 31. Although I sympathize with the frustration that the recent litigation must have caused the plaintiff and find little merit in the defendant's often specious arguments in opposition to the fee application, I cannot square the language of the settlement agreement's fee-shifting provision, on which Flagstar exclusively relies, with the circumstances of this case. I therefore deny the motion.

## I.    Background

On May 30, 2006, the parties submitted a "Stipulation and Settlement Agreement for Final Judgment" (the "Stipulation") together with a proposed "Final Judgment by Consent in Favor of Plaintiff Flagstar Bank, FSB and Against Defendants Caribbean Mortgage Corp. and Udit Meetoo." DE 16.  The terms of the Stipulation were clear and unambiguous, and the document explicitly stated that it was prepared by all parties, and that it constituted the parties' entire agreement – thus disavowing any terms other than those written in the document itself and any reliance on any prior discussions or agreements.  Stipulation ¶¶ 11, 12.  As requested, Judge Gleeson thereafter signed the proposed consent judgment.  DE 17.  The case was thus closed.

Less than five months later, the defendants sought to undo that stipulated resolution of the case.  On October 27, 2006, consistent with Rule 2.A of Judge Gleeson's individual practice rules, their counsel took the first step in the process of filing a motion for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b) by submitting a letter that requested a pre-motion conference.  DE 20.  The letter described "[t]wo disputes that have occurred between plaintiff and Defendants" in implementing the settlement, *id.* at 2, and concluded that Flagstar's "lack of cooperation provide[d] a basis for seeking to reform or vacate the Stipulation of Settlement and/or vacating the said Judgment under F.R.C.P. 60(b)." *Id.* at 3.  Judge Gleeson plainly understood the request, as I did, to be the first step in litigating a motion to undo the settlement and alter the consent judgment – a fact made evident by his order of November 2, 2006, referring to me "[t]he proposed Rule 60(b) motion by Caribbean Mortgage Corp. and Udit Meetoo, which is the subject of Mr. Straniere's letter of October 27, 2006."

The plaintiff submitted a response addressing the merits of the dispute on November 14, 2006. DE 22. Thereafter, on December 8, 2006 (and only after some prodding from me in an attempt to gain a clearer understanding of the legal claims at issue), the defendants submitted a letter describing with greater specificity the reasons they thought the Stipulation might be subject to attack. DE 28. In their letter the defendants asserted that Paragraph 7 of the Stipulation was ambiguous, and went on to argue that the perceived ambiguity should be resolved in the their favor on the basis of factual allegations that one of the lawyers had made about the parties' intentions. The defendants further argued that if the perceived ambiguity was resolved in Flagstar's favor, the result would be an agreement that lacked mutuality, was unconscionable (in that it would require the defendants to pay Flagstar all of what was owed, rather than a lesser amount the defendants unilaterally determined to be reasonable), and therefore unenforceable.

After some difficulty, *see* DE 23; DE 24; DE 25; DE 26, I managed to get the parties' respective attorneys before me for the pre-motion conference on December 14, 2006. I questioned the attorneys extensively on the merits of the dispute. After hearing both sides, the defendants persisted in their desire to be granted leave to file a Rule 60(b) motion. I granted that application and set a schedule for the submission of further factual allegations and legal arguments. DE 29.[1]

---

[1] One of the more confusing aspects of the defendants' presentation at the conference was the fact that the attorney making the presentation, Robin Wolfe ("Wolfe"), repeatedly described his allegations and factual arguments as "Mr. Straniere's position" – referring to his co-counsel, Robert A. Straniere ("Straniere"), who had submitted the request for a pre-motion conference on behalf of the defendants and who was sitting next to Mr. Wolfe at counsel table during the conference. For reasons that escaped me then, and that continue to escape me now even as he persists in the practice (*see* DE 32 at 5 (letter dated December 27, 2006)), Wolfe appeared reluctant to either to endorse the positions he attributed to Straniere as those of the defendants themselves or to let his partner speak for himself in articulating those positions. While that odd

I am sure that the questions I asked at the conference, the content of the attorneys' responses, and, most importantly, the applicable law, made it apparent to all concerned that the defendants' legal challenge to the Stipulation lacked merit and that, in any event, a motion for relief from judgment pursuant to Rule 60 was not an appropriate procedural mechanism for pursuing such a challenge. It therefore came as no great surprise when, five days after the pre-motion conference, the defendants submitted a letter expressing their decision not to file the motion after all. DE 30. To the extent that the defendants sought to save face by asserting that the discussion at the pre-motion conference "mooted the claims made by us regarding the enforceability of the Stipulation," *id.*, the artifice was obvious: the "clarifications" to which counsel alluded were merely affirmances by Flagstar's counsel that the Stipulation means what it says and what Flagstar's counsel had been saying it meant all along.

Thus, at the end of almost two months of litigation, the plaintiff had prevailed. I use the term advisedly, for reasons that will become apparent, but the justification for using the word is plain: the defendants had taken the first steps needed to reopen a closed case and vacate the judgment, with the stated intention of achieving that result; the plaintiff had opposed those efforts; and at the end of the intervening litigation, the plaintiff's position had been vindicated and the status quo – which the defendants had sought to upset – maintained.

Flagstar was, quite understandably, dissatisfied to have had to bear the costs arising from those two months of litigation. Accordingly, on December 21, 2006, it filed a letter motion asking for "an order awarding it contractual attorney's fees and costs incurred in connection with

stance prompted me, in an abundance of caution, to provide an opportunity for Straniere to submit further factual allegations in support of the proposed motion for relief from judgment, *see* DE 29, it has no bearing on my resolution of the instant fee application.

4

Defendants' attempts to vacate or reform the parties' agreement."  DE 31 at 1.  The defendants

responded on December 27, 2006.  DE 32.  Flagstar submitted a reply two days later.  DE 33.

II.     Discussion

The frustration that drives Flagstar's motion is justified.  The legal argument that supports

it is not.  If I could decide this motion by reference to what is fair, or even by weighing the

relative quality of the arguments on both sides, I would not hesitate to grant the motion.  But the

authority on which Flagstar relies in not a creature of law but rather of a private agreement that,

in this context, I must construe narrowly.  As explained below, Flagstar cannot prevail under the

facts of this case.

The parties agree that Flagstar's right to reimbursement of its costs, if such a right exists,

is grounded in the following provision:

> In the event it becomes necessary for any party of this Stipulation to bring any
> legal action at law or in equity to enforce any rights in connection with this
> Stipulation, then in such event, the prevailing party shall be entitled to the
> recovery of reasonable attorneys' fees and costs incurred therewith, including any
> and all appeals therefrom.

Stipulation ¶ 23.  Flagstar contends that it is the prevailing party and therefore entitled to

recovery under this provision; the defendants disagree.

For the most part, the reasons the defendants cite as the basis for their disagreement are

specious and warrant little discussion.  In essence, the defendants would have me conclude –

somewhat inconsistently – that there was no litigation, and that Flagstar did not win it.  Neither

position is persuasive.

In making the first point – that there was never any litigation, just a discussion – the

defendants rely on one proposition that is demonstrably true (though irrelevant) and one that is

demonstrably false (but material). Specifically, the defendants note that the conference before me was a pre-motion conference rather than a motion hearing – which they somehow, though quite obviously incorrectly, seek to characterize as being something other than litigation. They also claim that in convening the conference they "never sought or even mentioned the possibility of reformation of the Stipulation." DE 32 at 2. As noted above, that assertion is simply untrue, as demonstrated by the text of Straniere's letter in requesting the pre-motion conference. *See* DE 20 at 3.[2] Moreover, to the extent that the defendants seek to rely on some meaningful difference between a "conference and a "hearing," *see* DE 32 at 3 (deriding plaintiff for falsely describing the conference as a hearing on the ground that "[n]o testimony was taken"), their argument is frivolous. *See* Black's Law Dictionary 737 (8th ed. 2004) (defining "hearing" as "[a] judicial session, usu[ally] open to the public, held for the purpose of deciding issues of fact or of law, sometimes with witnesses testifying").

---

[2] The defendants' most recent version of events, besides being false, is also troubling because it suggests that their counsel deliberately misled the court in seeking the conference. When the defendants asked for a conference, the case had for several months been closed as the result of a settlement and a judgment entered on consent. The parties had reached an agreement that fully and finally resolved the litigation; there was no need for the court to monitor that agreement and no occasion for the court to become involved in an attempt by either side to renegotiate its terms. In such circumstances, had the defendants characterized their request for judicial intervention in October as nothing more than an attempt to secure certain "concessions" from the plaintiff in the implementation of the agreement – which is the result the defendants now say they achieved, DE 32 at 7 – the request would have been denied because it would not have raised a justiciable controversy. And yet, now that they are opposing the fee application, that is all the defendants say they wanted when they explicitly requested a pre-motion conference. The discrepancy between what the defendants said they were seeking in October and the far more limited relief they now claim they were seeking is so fundamental that it seems unlikely that the defendants can have been in strict compliance with the requirements of Federal Rule of Civil Procedure 11 in submitting both of the papers in which those characterizations appeared (DE 20 and DE 32). There is, however, no motion for sanctions before me, and in the interest of ending this litigation rather than needlessly prolonging it, I decline to exercise my authority under Rule 11(c)(1)(B).

The defendants' second point is no better. There is no question in my mind that the defendants started out by trying to undermine the Stipulation's terms and that their effort ended unsuccessfully. That they quit the field before losing it does nothing to change Flagstar's position as the prevailing party.

Notwithstanding the extent to which the defendants rely on arguments or characterizations of the record that are plainly without merit, I cannot award Flagstar the recovery it so richly deserves. Its claim for fees is made solely on the strength of the Stipulation, which is governed by the law of New York. Stipulation ¶ 15. As a general matter, that law proscribes awards of attorneys' fees. *See Oscar Gruss & Son*, *Inc*. *v*. *Hollander*, 337 F.3d 186, 199 (2d Cir. 2003). The exception to that general rule, which Flagstar seeks to invoke, is that parties to a private agreement can explicitly provide for an award of fees as a form of damages. Such agreements, however, "must be strictly construed to avoid inferring duties that the parties did not intend to create." *Id*. Fees should be awarded only if it appears "unmistakably clear" that the parties intended to make attorneys' fees available under the circumstances presented. *Id*.; *Bridgestone/Firestone*, *Inc*. *v*. *Recovery Credit Services*, *Inc*., 98 F.3d 13, 20-21 (2d Cir. 1996).

Applying that rule of law, I cannot find that the parties agreed to cover the present circumstances under the fee-shifting provision of their Stipulation. The problem is not, as the defendants argue, that there was no litigation or that Flagstar did not prevail, but rather that Flagstar did not "bring any legal action ... to enforce any rights in connection with this Stipulation[.]" Stipulation ¶ 23. Nor did the defendants. Instead, the defendants set about making a motion to undo the Stipulation rather than enforce it, and the plaintiff resisted that motion. In this respect, I am constrained to agree with the defendants' hair-splitting: by making

an improper request for further proceedings in this already-closed legal action, as opposed to instituting a new proceeding or forcing Flagstar to do so by standing on what it originally described as its rights under the Stipulation and thereby provoking an enforcement action, the defendants did not occasion any new legal action. I imagine that, in their negotiations, the attorneys exchanged assurances that *any* form of litigation arising from the implementation of the Stipulation would be subject to the fee-shifting provision. But that is not precisely the provision they wrote into Paragraph 23 of the Stipulation, and indeed they articulated a somewhat wider category of fee-shifting circumstances elsewhere in their agreement than they did in the paragraph on which Flagstar relies. *See* Stipulation ¶ 10. As a result, I am constrained by New York law to construe the contractual language at issue against Flagstar and deny its request for an award of fees.

III.    Conclusion

For the reasons set forth above, I deny the motion by plaintiff Flagstar for an award of litigation costs including reasonable attorneys' fees.

        **SO ORDERED.**

Dated:  Brooklyn, New York
        January 3, 2007

                                        /s/ James Orenstein
                                        JAMES ORENSTEIN
                                        U.S. Magistrate Judge